995 F.2d 1064
 38 Cont.Cas.Fed. (CCH) P 76,530
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, t/a Westinghouse Electric Supply
Corporation, for the use and benefit of
Westinghouse Electric Corporation,
Plaintiff-Appellee,
v.
NORTH LANDING LINE CONSTRUCTION COMPANY; Fidelity and
Deposit Company of Maryland, Defendants-Appellants.
United States of America, t/a Westinghouse Electric Supply
Corporation, for the use and benefit of
Westinghouse Electric Corporation,
Plaintiff-Appellant,
v.
North Landing Line Construction Company; Fidelity and
Deposit Company of Maryland, Defendants-Appellees.
 Nos. 92-2186, 92-2222.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 7, 1993
Decided: June 10, 1993
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk. Robert G. Doumar, District Judge. (CA-91-448-N)
 Benjamin Arthur Hubbard, III, Outland, Gray, O'Keefe & Hubbard, Chesapeake, Virginia, for Appellants.
 David Marshall Zobel, Huff, Poole & Mahoney, P.C., Virginia Beach, Virginia, for Appellee.
 E.D.Va.
 REVERSED.
 Before LUTTIG, Circuit Judge, SPROUSE, Senior Circuit Judge, and KISER, Chief United States District Judge for the Western District of Virginia, sitting by designation.
 LUTTIG, Circuit Judge:
 
 OPINION
 
 1
 Pursuant to the Miller Act, the United States brought suit against the North Landing Line Construction Company ("NLL") and its performance bond surety for the use and benefit of NLL's subcontractor, Westinghouse Electric Corporation, trading as Westinghouse Electrical Supply Corporation ("WESCO"). Following a bench trial and supplemental briefing, the district court interpreted the contract between NLL and WESCO not to require provision of spare parts for certain materials ordered by NLL. Because we conclude that the district court misconstrued the contractual terms, we reverse.
 
 I.
 
 2
 NLL, as general contractor, contracted to furnish the labor and material for a Navy project in Norfolk, Virginia. WESCO entered into a subcontract with NLL to provide gas circuit breakers, which it ultimately failed to supply. The parties stipulated that as of the time of trial the amount owed by NLL to WESCO under the contract was some $166,000. NLL, however, claimed an offset for the same amount for the cost of covering WESCO's failure to supply conforming breakers. WESCO conceded that the cost of those breakers in excess of its bid, approximately $99,000, was a valid setoff, and thus the only question remaining was whether, pursuant to the contract, WESCO had been obligated to supply spare parts for the breakers, worth approximately $45,000. (NLL has paid $22,000 in partial satisfaction of the judgment against it, leaving only that $45,000 in contest.)
 
 
 3
 At the core of this dispute is the meaning and significance of the specifications governing the Navy's contract with NLL. In its purchase order, NLL offered to buy from WESCO ten gas circuit breakers "in strict accordance" with those specifications, J.A. at 532, which required in paragraph 2.2.7 that "spare parts shall also be provided for four breakers," id. at 511. In an acceptance apparently agreeable to NLL, WESCO cautioned that it was "quoting all materials based on [its] interpretation of the plans and specifications," id. at 534. Though it now concedes-as it clearly must-that the specifications required spare parts for all types of breakers and that it knew this as early as February 6, 1990, at the time of contracting WESCO interpreted the specifications to require spare parts for oil breakers only, not the gas breakers actually ordered by NLL.
 
 
 4
 Because NLL's purchase order did not specify spare parts and WESCO's acceptance was specifically made subject to its own interpretation of the specifications, the district court ruled in favor of WESCO. Id. at 577 ("The Court finds that WESCO interpreted the specifications to require spare parts for oil breakers only, not gas breakers, and that WESCO was not required to supply additional parts not listed on the purchase order merely because additional parts were provided for in the specifications."). NLL appeals.
 
 II.
 
 5
 NLL argues simply that WESCO was obligated under the plain terms of the specifications to provide spare parts. WESCO makes two complementary arguments in defense of the judgment below. Because NLL's purchase order did not expressly enumerate spare parts, WESCO maintains that it was under no obligation to supply them and that the specification for spare parts was therefore simply not implicated. In a related vein, WESCO argues that it was not required to supply spare parts because at the time of contracting it interpreted the specifications not to require them for gas breakers. While we cannot conclude that the district court committed clear error in finding that WESCO had in fact interpreted the specifications not to require spare parts for gas breakers, we do not believe this finding to be determinative.
 
 
 6
 It is not disputed that the Navy specification for the circuit breakers themselves could have been met by either of two types of breakers, see id. at 510 ("34.5KV Outdoor Circuit Breakers shall have either oil or sulphur hexafluoride (SF6) gas interrupting medium ...."), or that NLL chose to order gas breakers from WESCO, see id. at 531 ("10 SF-6 Circuit Breakers"). Moreover, WESCO does not maintain that its contract with NLL did not incorporate the specifications, nor could it, given the plain terms of its acceptance of NLL's offer. And finally, even WESCO does not now dispute that the specification for spare parts was not conditioned on the type of breaker supplied and that it sought to supply them, see Appellee's Br. at 17.
 
 
 7
 Accordingly, we agree with NLL that WESCO was obligated to supply spare parts. Their contract incorporated the specifications, which clearly and unambiguously required WESCO to supply spare parts. We refuse to allow WESCO to escape its obvious contractual duty merely because it inexplicably adopted an unreasonable, and now an admitted incorrect, construction of the specifications. In view of our disposition of this case, we need not consider WESCO's claim on cross-appeal that the district court erred in its award of interest on the judgment.
 
 CONCLUSION
 
 8
 For the reasons stated above, the judgment of the district court is reversed.
 
 REVERSED
 
 9
 Judge KISER dissents.